IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> HOLLY ENERGY PARTNERS–OPERATING, L.P., and OSAGE PIPE LINE CO., LLC, <br><br> Defendants. | Civil Action No. CIV-24-107-J <br><br> Judge |

# COMPLAINT

The United States of America, acting at the request of the United States Environmental Protection Agency (EPA), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Holly Energy Partners-Operating, L.P., and Osage Pipe Line Company, LLC, ("Defendants") related to Defendants' unlawful discharge of at least 7,100 barrels (over 298,000 gallons) of heavy crude oil (diluted bitumen) from a 20-inch-diameter pipeline, named the Osage pipeline, that ruptured about five miles north of Cushing, Oklahoma, on July 8, 2022. The pipeline rupture occurred adjacent to Skull Creek, a tributary of the nearby Cimarron River. The spilled oil flowed into Skull Creek and contaminated the creek and the adjoining shorelines on

1

restricted Indian land owned by members of the Sac and Fox Nation. Cleanup efforts are ongoing.

2. The United States seeks civil penalties pursuant to Section 311(b)(7)(A) and (D) of the Clean Water Act (CWA), 33 U.S.C. § 1321(b)(7)(A) and (D), and injunctive relief pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

## JURISDICTION, AUTHORITY, AND VENUE

3. This Court has jurisdiction over this matter pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n), and 28 U.S.C. §§ 1331, 1345, 1355.

4. Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by, *inter alia*, Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

5. Venue is proper in the United States District Court for the Western District of Oklahoma under Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395 because the claim arose in this district and Defendants are located and doing business in this district.

## THE PARTIES

6. Plaintiff United States of America is acting on behalf of the EPA. The EPA is serving as the lead federal agency in the oversight of the oil spill cleanup efforts, in consultation and coordination with the Sac and Fox Nation and Defendants.

7. Defendant Osage Pipe Line Company, LLC, is the owner of the Osage pipeline. The company is a Delaware corporation with its headquarters in Dallas, Texas.

The company is co-owned by Holly Energy Partners, L.P., which is part of the HF Sinclair group of companies, and CHS Inc.

8. Defendant Holly Energy Partners-Operating, L.P., is the operator of the Osage pipeline. The company is a Delaware corporation with its headquarters in Dallas, Texas. The company is a subsidiary of Holly Energy Partners, L.P.

## FACTS

9. The Osage pipeline is owned by Defendant Osage Pipe Line Company, LLC, and operated by Defendant Holly Energy Partners-Operating, L.P.

10. The pipeline is an underground, 20-inch-diameter crude oil pipeline that runs north for about 135 miles from Cushing, Oklahoma, to El Dorado, Kansas. The pipeline was built in 1975.

11. The pipeline is used to transport crude oil from Cushing, Oklahoma, to the HF Sinclair refinery in El Dorado, Kansas. The pipeline also connects to another line that runs to the CHS refinery in McPherson, Kansas.

12. On or about July 8, 2022, a segment of the Osage pipeline ruptured about five miles north of Cushing in Payne County, Oklahoma, near the intersection of South Harmony Road and East Fairlawn Road.

13. The pipe rupture occurred on and impacted allotted land owned by members of the Sac and Fox Nation and held in trust by the United States.

14. Defendants were pumping crude oil through the pipeline at the time of the spill.

15. The rupture in the steel pipe extended nearly five feet along the welded longitudinal seam of one pipe segment.

16. The ruptured portion of the pipe was identified as a potential area of concern in internal pipe monitoring inspections in 2014, but that segment of pipe was not excavated and examined by Defendants until after the rupture in July 2022.

17. At least 7,100 barrels of crude oil (298,200 gallons) discharged from the pipeline.

18. The oil gushed out of the pipeline onto land next to the perennial waterway known as Skull Creek and then flowed into Skull Creek. From the point of the pipeline rupture, Skull Creek flows about four more miles before joining the Cimarron River.

19. Defendants' oil polluted Skull Creek and its shoreline. The oil impacted soil, vegetation, the creek banks, surface water, and sediment on the creek bottom.

20. Numerous oiled or dead fish and other wildlife were observed in the creek and spill area. The variety of animals known to inhabit the impacted creek area includes beaver, river otter, deer, fish, snakes, turtles, and birds.

21. The presence of oil from the pipeline rupture continues to be visible in Skull Creek more than a year after the spill. Oil in the creek has been observed over two miles down Skull Creek from the location where the oil first entered the creek.

22. As part of the emergency response, Defendants constructed a temporary underflow dam to try to block the oil from continuing farther downstream at a natural collection point about 1-to-1.25 miles downstream of the location where the oil first entered Skull Creek. The damming of the waterway, in turn, caused oil in the creek to be

transported upstream as far as approximately the bridge at South Harmony Road as the water level rose in the creek.

23. During Defendants' cleanup efforts, hundreds of trees, in addition to other plants and shrubs, were destroyed and removed along the creek to make road and shoreline access for trucks, boats, and other removal equipment and storage tanks.

24. Defendants continue to work on oil removal, natural and cultural resource impact assessments, and remediation activities at the spill site with oversight by the EPA and in consultation with the Sac and Fox Nation.

25. Defendants replaced the ruptured segment of pipe and resumed operation of the pipeline under reduced operating pressure and other conditions imposed in safety protocols issued by the federal Pipeline and Hazardous Materials Safety Administration.

## CAUSES OF ACTION

### CLAIM ONE
### Civil Penalty for Violation of CWA Section 311(b)(3) – Oil Discharge
### 33 U.S.C. § 1321(b)(3)

26. Paragraphs 1 through 25 are realleged and incorporated herein.

27. Section 311(b)(3) of the CWA prohibits the "discharge of oil or any hazardous substances (i) into or upon the navigable waters of the United States [or] adjoining shorelines . . . in such quantities as may be harmful . . . ." 33 U.S.C. § 1321(b)(3).

28. Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is

discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

29. Civil penalties can be increased pursuant to Section 311(b)(7)(D) of the CWA, if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

30. Enforcement of these provisions supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1321(b)(1), 1251(a).

31. Each Defendant is a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

32. Defendants' pipeline is an "onshore facility" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

33. Defendant Osage Pipe Line Company, LLC, is the owner of the onshore facility from which oil was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

34. Holly Energy Partners-Operating, L.P., is the operator of the onshore facility from which oil was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

35. The spilling of oil from Defendants' pipeline on July 8, 2022, constituted a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

36. The discharge was of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

37. The discharge of oil into Skull Creek was into or upon the navigable waters of the United States within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

38. The discharge was in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3. The spilled oil also caused, *inter alia*, an oil film or sheen upon or discoloration of the surface of the water and adjoining shorelines and caused deposition beneath the surface of the water and upon adjoining shorelines.

39. Defendants' discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

40. Defendants are liable for civil penalties of up to $2,232 per barrel discharged under CWA Section 311(b)(7)(A), or, if it is proved that the violations are the result of gross negligence or willful misconduct, not more than $6,696 per barrel discharged under Section 311(b)(7)(D). *See* 40 C.F.R. § 19.4 (establishing, effective after January 6, 2023, that the per-barrel civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty Inflation Adjustment Rule for the period at issue here).

## CLAIM TWO
### Injunctive Relief Under CWA Section 309(b)
### 33 U.S.C. § 1319(b)

41. The preceding paragraphs are realleged and incorporated herein.

42. Section 301(a) of the CWA, 33 U.S.C. § 1319(b), prohibits "the discharge of any pollutant by any person," subject to exceptions not applicable here.

43. Defendants' discharge of oil from the Osage pipeline was an unlawful discharge of a pollutant within the meaning of CWA Section 301(a).

44. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes this civil action for "appropriate relief, including a permanent or temporary injunction."

45. Defendants are liable for injunctive relief pursuant to Sections 301(a) and 309(b) of the CWA.

## REQUEST FOR RELIEF

WHEREFORE, the United States of America, respectfully requests that this Court:

A. Enter a judgment that Defendants are liable to the United States for civil penalties pursuant to Section 311(b) of the Clean Water Act and assess civil penalties of up to $2,232 per barrel discharged pursuant to Section 311(b)(7)(A) or, if the violation is found to be the result of gross negligence or willful misconduct, no more than $6,696 per barrel discharged pursuant to Section 311(b)(7)(D);

B. Enter a judgment that Defendants are liable to the United States for all appropriate injunctive relief pursuant to Sections 301(a) and 309(b) of the Clean Water Act and award injunctive relief against each defendant as appropriate;

C. Grant the United States such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division


     *s/ Jason T. Barbeau*
JASON T. BARBEAU
Senior Attorney (DC Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
jason.barbeau@usdoj.gov


ROBERT J. TROESTER
United States Attorney
Western District of Oklahoma

RONALD R. GALLEGOS
Assistant U.S. Attorney (AZ Bar No. 013227)
SARAH GREENWALT MCMURRAY
Assistant U.S. Attorney (OK Bar No. 31566)
U.S. Attorney's Office
Western District of Oklahoma
210 Park Ave., Suite 400
Oklahoma City, OK 73102
Phone: (405) 553-8700
ron.gallegos@usdoj.gov
sarah.mcmurray@usdoj.gov

Of Counsel:

Amy Salinas
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, 6RC-S
Dallas, Texas 75270