## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 5:24-cv-00107-J** |
| | ) | |
| **HOLLY ENERGY PARTNERS–** | ) | |
| **OPERATING, L.P., and** | ) | |
| **OSAGE PIPE LINE COMPANY, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____)

## **CONSENT DECREE**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE  ......................................................... 2

II.     APPLICABILITY .............................................................................. 2

III.    DEFINITIONS ................................................................................... 3

IV.     CIVIL PENALTY ............................................................................. 4

V.      INJUNCTIVE RELIEF ..................................................................... 6

VI.     STIPULATED PENALTIES ............................................................ 12

VII.    FORCE MAJEURE  ......................................................................... 15

VIII.   DISPUTE RESOLUTION  ............................................................... 17

IX.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS...................... 20

X.      COSTS ............................................................................................. 22

XI.     NOTICES ......................................................................................... 22

XII.    EFFECTIVE DATE .......................................................................... 24

XIII.   RETENTION OF JURISDICTION .................................................. 24

XIV.    MODIFICATION .............................................................................. 24

XV.     TERMINATION ............................................................................... 25

XVI.    PUBLIC PARTICIPATION  ............................................................. 25

XVII.   SIGNATORIES/SERVICE  .............................................................. 26

XVIII.  INTEGRATION ................................................................................ 26

XIX.    26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ............................ 27

XX.     FINAL JUDGMENT ........................................................................ 27

## CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency (EPA), has filed a Complaint, concurrently with the lodging of this Consent Decree, against Holly Energy Partners-Operating, L.P. (HEP), and Osage Pipe Line Company, LLC, ("Settling Defendants"). The Complaint alleges that on July 8, 2022, Osage Pipe Line Company's 20-inch-diameter oil pipeline, named the Osage Pipeline ("Pipeline") and operated by HEP, ruptured about five miles north of Cushing, Oklahoma, and discharged an estimated 7,110 barrels (298,620 gallons) of Christina Dilbit Blend crude oil into the environment (the "Discharge"). The United States seeks civil penalties and injunctive relief under the Clean Water Act, 33 U.S.C. §§ 1251-1388 (CWA), to redress the Discharge.

This Consent Decree resolves the allegations in the Complaint against Settling Defendants as set forth in this Consent Decree. Settling Defendants do not admit liability arising out of the occurrences or alleged violations. Settling Defendants have undertaken substantial efforts to respond to the oil discharge and are working to address and improve the operating conditions of the Pipeline. Settling Defendants further assert that they are committed to working with the EPA, the Sac and Fox Nation, and affected landowners to ensure the completion of the cleanup efforts.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid prolonged litigation between the Parties on the claims addressed in the Complaint, and that this Consent Decree is fair, reasonable, and in the public interest.

1

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law or liability except as provided in Section I, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, CWA Section 311(b)(7)(E) and (n), 33 U.S.C. § 1321(b)(7)(E) and (n), and over the Parties. Venue lies in this district pursuant to CWA Section 311(b)(7)(E) and (n), 33 U.S.C. § 1321(b)(7)(E) and (n), and 28 U.S.C. §§ 1391 and 1395(a). For purposes of this Consent Decree, or any action to enforce this Decree, Settling Defendants consent to the Court's jurisdiction over this Decree and any such action over Settling Defendants and consent to venue in this judicial district.

2.     For purposes of this Consent Decree only, Settling Defendants agree that the Complaint states claims upon which relief can be granted pursuant to CWA Sections 311(b) and 309(b), 33 U.S.C. §§ 1321(b), 1319(b).

## II.     APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Settling Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.     Upon entry of this Consent Decree by the Court, Settling Defendants shall provide a copy of at least the injunctive relief portion of this Decree to all officers, employees, and agents whose duties might reasonably include compliance with any

2

provision of this Decree, as well as to any contractor retained to perform work required under this Decree. Settling Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Decree.

5.      No transfer of ownership or operation of the Pipeline shall relieve a Settling Defendant of its obligation to ensure that the requirements of this Consent Decree are implemented, unless (1) the transferee agrees to undertake the obligations required by this Decree and to be substituted for one or both (as applicable) Settling Defendants as a Party under the Decree and thus be bound by the terms thereof, (2) the United States consents to relieve such Settling Defendant(s) of its/their obligations under the Decree, and (3) the Court approves a joint motion from the United States, such Settling Defendant(s), and the transferee requesting that the Court approve a modification substituting the transferee as the Settling Defendant responsible for complying with the terms and conditions of the Decree.

6.      In any action to enforce this Consent Decree, Settling Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

## III.    DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Decree, including any Appendices to this Decree, the following definitions shall apply:

3

"Complaint" shall mean the complaint filed by the United States in this action;

"Consent Decree" or "Decree" shall mean this Consent Decree;

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendants" and "Settling Defendants" shall mean Holly Energy Partners-Operating, L.P., and Osage Pipe Line Company, LLC;

"Effective Date" shall have the definition provided in Section XII;

"EPA" shall mean the United States Environmental Protection Agency;

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

"Parties" shall mean the United States and Settling Defendants;

"PHMSA" shall mean the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration;

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

"United States" shall mean the United States of America, acting on behalf of the EPA.

## IV.   CIVIL PENALTY

8.     Within thirty (30) Days of the Effective Date, Settling Defendants shall pay $7,400,000.00 as a civil penalty, jointly and severally, together with interest accruing

from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.      Settling Defendants shall pay the civil penalty required under Paragraph 8 by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with written instructions to be provided to Settling Defendants by the United States Attorney's Office for the Western District of Oklahoma. Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-12810 and shall specify that the payment is made toward CWA civil penalties pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

10.      At the time of payment, Settling Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalties owed pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-12810, to the United States in accordance with Section XI of this Decree (Notices) and to:

> Thomas H. Van Horn
> National Pollution Funds Center
> US Coast Guard Mailstop 7605
> 2701 Martin Luther King Jr. Avenue, SE
> Washington, DC 20593-7605

11.      Settling Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VI (Stipulated Penalties) in calculating their federal income tax.

## V.    INJUNCTIVE RELIEF

12.    Settling Defendants shall perform the following injunctive relief to address the Discharge and help prevent and mitigate any future oil discharges from the Pipeline. One Settling Defendant may perform the required injunctive relief set forth in this Section V on behalf of both Settling Defendants.

13.    Settling Defendants shall complete the investigation and remediation of oil pollution in and around Skull Creek resulting from the Discharge under the oversight of the EPA. Settling Defendants shall prepare draft and final remedial work plans and remedial action reports for the EPA. Upon submitting the draft remedial action workplan and the final remedial action report to the EPA, Settling Defendants shall also provide the impacted landowners and the government of the Sac and Fox Nation thirty (30) Days to review and provide comments on such drafts. As to the Sac and Fox Nation, the draft remedial action workplan and the draft final remedial action report shall be provided to the Principal Chief and the director of the Office of Environmental Services. Settling Defendants shall provide to the EPA a separate written summary of Settling Defendants' responses to comments received and any changes made to the drafts based on the comments. When Settling Defendants have completed all investigation and remediation work at the Discharge site, Settling Defendants shall submit to the EPA a final remedial action report demonstrating and certifying completion of the work. When the EPA reviews the report and determines that Settling Defendants have completed all investigation and remediation work at the Discharge site, the EPA shall provide Settling Defendants with an EPA Final Pollution Report stating such determination.

14.     Settling Defendants shall make good faith efforts to continue to fund tribal monitors from the Sac and Fox Nation at the Discharge site for the duration of Settling Defendants' cleanup and remediation work to monitor for impacts to natural, environmental, and culturally significant resources in accordance with the terms and conditions of the Temporary Tribal Monitoring Agreement by and between Osage Pipe Line Company and the Sac and Fox Nation as modified or extended in an amendment thereto.

15.     Settling Defendants shall henceforth treat the entire Pipeline as known to be susceptible to threat of failure due to cracks (including but not limited to cracks along the longitudinal seam) for all future risk assessment and operational purposes, including in the assessment of pipeline seam integrity and detection of cracks, corrosion, and deformation anomalies. Settling Defendants may reassess and reclassify this status determination if they can establish through testing and other assessment and data analysis that the threat of failure due to cracks (including but not limited to cracks across the longitudinal seam) is no longer an integrity risk.

16.     Within 90 Days of the Effective Date, Settling Defendants shall create and implement a written procedure requiring the following, in the event of any future discharge from the Pipeline in Oklahoma or Kansas: (i) Settling Defendants shall make immediate good faith efforts to notify the affected property owner(s) upon discovering that the discharge impacts the particular property; and (ii) in the event a future discharge occurs within the historic boundary of a federally recognized Indian tribe, Settling Defendants shall also immediately notify such tribal government of the discharge. As to

7

the Sac and Fox Nation, notice shall be provided to the Principal Chief and the directors of the Office of Environmental Services and the Realty Department.

17.     Within 150 Days of the Effective Date, Settling Defendants shall develop additional tabletop exercises for training all control room operators and supervisors to include scenarios that cover the operating conditions, alarms, and pipeline failure on the night of the July 2022 Discharge. This additional tabletop training shall be provided to current employees within 180 Days of the Effective Date. This additional tabletop training also shall be provided again annually in 2025 and 2026, as well as to new employees after completion of their basic training and before obtaining DOT operator qualifications. Settling Defendants shall document and retain records of every training session provided under this Paragraph. Training records will include, at a minimum, (1) the name and position of the person who conducted the training, (2) a list of topics covered at each training, and (3) a documented roster of attendees for each training.

18.     Within 180 Days of the Effective Date, or earlier if directed by PHMSA, HEP shall develop and implement a Crack Management Program that includes the concepts of API Recommended Practice 1176, "Recommended Practice for Assessment and Management of Cracking in Pipelines," (First Edition, June 2016) relating to at least the following: (i) crack susceptibility assessment; (ii) inspection methods and technologies; (iii) crack assessment methods, (iv) in-the-ditch assessments; (v) repair methods; (vi) reassessment interval determination; (vii) prevention and mitigation measures; (viii) performance measures; and (ix) record keeping. HEP's implementation of its Crack Management Program shall include any PHMSA-required revisions or

8

modifications thereto imposed by a PHMSA final compliance order or consent decree,
whether such revisions or modifications are required by PHMSA before or after the 180-
Day deadline.

19.     Settling Defendants shall submit periodic progress reports on their
implementation of and compliance with this Consent Decree. Reports shall be submitted
to the United States by the end of the last month of each six-month period after the
Effective Date for three years or until such time as the EPA issues its Final Pollution
Report for the Discharge site, whichever is later. Each report shall describe the work
performed under this Decree during the reporting period, any discharges of oil or
hazardous substances from any of Settling Defendants' pipelines or pipeline-related
facilities reportable under federal or state law, any instances of non-compliance with this
Decree, and efforts made to address any instances of non-compliance with this Decree.

20.     Each report, letter report, or certification submitted by any Settling
Defendant under this Section shall be signed by an official of the submitting party and
include the following certification:

> I certify under penalty of law that this document and all attachments
> were prepared under my direction or supervision in accordance with a system
> designed to assure that qualified personnel properly gather and evaluate the
> information submitted. Based on my inquiry of the person or persons who
> manage the system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my knowledge and
> belief, true, accurate, and complete. I am aware that there are significant
> penalties for submitting false information, including the possibility of fine
> and imprisonment for knowing violations.

21.     Such reports may be submitted as a single report on behalf of all Settling Defendants. The reporting requirements of this Consent Decree do not relieve Settling Defendants of any reporting obligations required by the CWA, or any implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

23.     Upon request, Settling Defendants shall provide the EPA or its authorized representatives splits of any samples taken by Settling Defendants. Upon request, the EPA shall provide Settling Defendants splits of any samples taken by the EPA. Settling Defendants and EPA shall each provide the other reasonable advance notice of any sampling activities.

24.     Until five years after the termination of this Consent Decree, Settling Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to the Discharge, the subsequent cleanup operations, and Settling Defendants' performance of their obligations under this Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention

period, upon request by the United States, Settling Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

25.     At the conclusion of the information-retention period provided in the preceding Paragraph, Settling Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Settling Defendants shall deliver any such documents, records, or other information to EPA. In the event the United States does not request delivery of documents, records, or other information within 90 Days of Settling Defendants providing such notice, Settling Defendants may destroy such documents, records, and information. Settling Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege or protection recognized by federal law. If a Settling Defendant asserts such a privilege or protection, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege or protection asserted by Settling Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege or protection.

26.     Settling Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI)

under 40 C.F.R. Part 2. As to any information that Settling Defendants seek to protect as CBI, Settling Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

27.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Settling Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VI.    STIPULATED PENALTIES

28.     Settling Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

29.     If Settling Defendants fail to pay the CWA civil penalty required to be paid under Section IV (Civil Penalty) when due, each Settling Defendant shall pay a stipulated penalty of ten thousand dollars ($10,000) per Day for each Day that payment is late.

30.     If Settling Defendants fail to perform, or ensure performance of, the injunctive relief required under Section V (Injunctive Relief) when due, the Settling Defendants shall jointly pay to the United States total combined stipulated penalties as follows:

    a.        1st to 30th day: $2,000 penalty per Day;

    b.        31st to 60th day: $3,000 penalty per Day; and

    c.        More than 60 days: $4,000 penalty per Day.

31.    Late payment of the penalties due under this Consent Decree and payment of any stipulated penalties shall be made in accordance with payment instructions in Section IV above. All transmittal correspondence shall state that any payment of stipulated penalties is for late payment of the penalties due under this Decree or for delayed performance of injunctive relief required under this Decree.

32.    For all payments of stipulated penalties, Settling Defendants shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-12810 and shall specify that payments are for stipulated penalties to be deposited into the United States Treasury.

33.    Stipulated penalties under this Section shall begin to accrue on the Day after the performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

34.    Settling Defendants shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

35.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

36.     Stipulated penalties shall continue to accrue as provided in Paragraphs 29, 30, and 33 during any Dispute Resolution procedures set forth in Section VIII, but need not be paid until the following:

      a.     If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Settling Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of the United States' decision.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.     If any Party appeals the District Court's decision, Settling Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

37.     If Settling Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Settling Defendants shall be liable for interest on such penalties, at the rate specified in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Settling Defendants' failure to pay any stipulated penalties.

38.    The payment of stipulated penalties and interest, if any, shall not alter in any way any Settling Defendant's obligation to complete the performance of the requirements of this Consent Decree.

39.    Subject to the provisions of Section IX of this Consent Decree (Effect of Settlement/Reservations of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for a Settling Defendant's violation of this Decree or applicable law.

## VII.   FORCE MAJEURE

40.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Settling Defendants' financial inability to perform any obligation under this Decree.

41.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Settling Defendants shall provide notice orally or by electronic or facsimile transmission

15

to the EPA within seventy-two (72) hours of when Settling Defendants first knew that the event might cause a delay. Within ten (10) Days thereafter, Settling Defendants shall provide in writing to the EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

42. If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify

16

Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

43.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Settling Defendants in writing of its decision.

44.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section VIII (Dispute Resolution), they shall do so no later than twenty-one (21) Days after receipt of the United States' notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 40 and 41. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## VIII.  DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree. Settling Defendants' failure to seek resolution of a dispute under this Section shall preclude Settling Defendants from raising

any such issue as a defense to an action by the United States to enforce any obligation of Settling Defendants arising under this Decree.

46.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Settling Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Settling Defendants invoke formal dispute resolution procedures as set forth below.

47.     Formal Dispute Resolution. Settling Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Settling Defendants' position and any supporting documentation relied upon by Settling Defendants.

48.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Settling Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the

18

United States. The United States' Statement of Position shall be binding on Settling Defendants, unless Settling Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

49.     Settling Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XI (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within sixty (60) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Settling Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

50.     The United States shall respond to Settling Defendants' motion within the time period allowed by the Local Rules of this Court. Settling Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.     Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 49, Settling Defendants shall bear the burden of demonstrating that its position complies with this Decree and better furthers the objectives of the Decree.

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, unless and until final resolution of the dispute so

19

provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36. If Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (Stipulated Penalties).

## IX.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

53.    This Consent Decree resolves the civil Clean Water Act claims of the United States against Settling Defendants for the violations alleged in the Complaint.

54.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.

55.    The United States reserves all legal and equitable claims for, including but not limited to, injunctive relief, penalties, recovery of any removal costs or damages, including natural resource damages, under the Oil Pollution Act (OPA), criminal liability, and other appropriate relief, except as expressly provided in Paragraph 53. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties, injunctive relief, costs, damages, or other appropriate relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly provided in Paragraph 53. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Settling Defendants' facilities or operations, whether related to the violations addressed in this Decree or otherwise, except as expressly provided in Paragraph 53.

56.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, costs, damages, criminal liability, other appropriate relief relating to Settling Defendants' violations, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon a contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 53.

57.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Settling Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Settling Defendants' compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Settling Defendants' compliance with any aspect of this Decree will result in compliance with provisions of the CWA or with any other provision of federal, State, or local laws, regulations, or permits.

58.     This Consent Decree does not limit or affect the rights of Settling Defendants or of the United States against any third parties, not party to this Decree, nor

does it limit the rights of third parties, not party to this Decree, against Settling

Defendants, except as otherwise provided by law.

59.     This Consent Decree shall not be construed to create rights in, or grant any

cause of action to, any third party not party to this Decree.

60.     Settling Defendants hereby covenant not to sue and agree not to assert any

claims related to the discharges alleged in the Complaint or response activities in

connection with the alleged discharges against the United States pursuant to the CWA,

OPA, or any other state or federal law or regulation for acts or omissions through the date

of lodging of this Consent Decree. Settling Defendants further covenant not to sue and

agree not to assert any direct or indirect claim for reimbursement from the Oil Spill

Liability Trust Fund or pursuant to any other provision of law.

## X.     COSTS

61.     The Parties shall bear their own costs of this action, including attorneys'

fees, except that the United States shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to collect any portion of the civil

penalties or any stipulated penalties due but not paid by Settling Defendants.

## XI.     NOTICES

62.     Unless otherwise specified in this Consent Decree, whenever notifications,

submissions, or communications are required by this Decree, they shall be made in

writing and addressed as follows by first-class mail and electronic mail:

<u>As to the United States</u>

To the U.S. Department of Justice:

EES Case Management Unit
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
eescdcopy.enrd@usdoj.gov
Re: DJ #90-5-1-1-12810

To the EPA:        Amy Salinas
Assistant Regional Counsel
United States Environmental Protection
Agency, Region 6
1201 Elm Street, 6RC-S
Dallas, Texas 75270
salinas.amy@epa.gov

<u>As to Settling Defendants</u>:     General Counsel
HF Sinclair
2828 N. Harwood, Suite 1300
Dallas, Texas 75201
generalcounsel@hfsinclair.com

Stephen L. Jantzen
Ryan Whaley PLLC
400 North Walnut Avenue
Oklahoma City, OK  73104
sjantzen@ryanwhaley.com

Timothy K. Webster
Sidley Austin LLP
501 K Street, N.W.
Washington, DC  20005
twebster@sidley.com

63.    Any Party may, by written notice to the other Parties, change its designated

notice recipient or notice address provided above.

23

64.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII.   EFFECTIVE DATE

65.     The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIII.  RETENTION OF JURISDICTION

66.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XIV.  MODIFICATION

67.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

68.     Any dispute concerning modification of this Consent Decree shall be resolved pursuant to Section VIII (Dispute Resolution), provided, however, that instead of the burden of proof provided in that Section, the Party seeking modification bears the burden of demonstrating that it is entitled to the required modification in accordance with Federal Rule of Civil Procedure 60(b).

24

## XV.   TERMINATION

69.     After Settling Defendants have completed the requirements of this Consent Decree, including injunctive relief, and have paid the civil penalties and any accrued stipulated penalties as required by this Decree, Settling Defendants may serve upon the United States a Request for Termination, stating that Settling Defendants have satisfied those requirements, together with all necessary supporting documentation.

70.     Following receipt by the United States of Settling Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Settling Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that this Decree may be terminated, the Parties shall submit, for the Court's approval, a joint motion to terminate this Decree.

71.     If the United States does not agree that this Consent Decree may be terminated, Settling Defendants may invoke Dispute Resolution under Section VIII. However, Settling Defendants shall not seek Dispute Resolution of any dispute regarding termination until thirty (30) Days after service of its Request for Termination.

## XVI.   PUBLIC PARTICIPATION

72.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate. Settling Defendants consent to entry of this

Decree without further notice and agree not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Decree.

## XVII.   SIGNATORIES/SERVICE

73.     Each undersigned representative of Settling Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

74.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Settling Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XVIII.   INTEGRATION

75.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Decree.

### XIX.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

76.     For purposes of the identification requirement of Section 162(b)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Paragraphs 13-19, 23-24, Section V (Injunctive Relief) is restitution or required to come into compliance with law.

### XX.   FINAL JUDGMENT

77.     Upon approval and entry of this Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and Settling Defendants.


Dated and entered this 26th day of March, 2024.


_____
BERNARD M. JONES
UNITED STATES DISTRICT JUDGE

27

**Signature Page to Consent Decree in *United States v. Holly Energy Partners-Operating, L.P., et al.***

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


January 16, 2024                    */s/ Jason T. Barbeau*
Date                                    JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
jason.barbeau@usdoj.gov


ROBERT J. TROESTER
United States Attorney
Western District of Oklahoma

RONALD R. GALLEGOS
Assistant U.S. Attorney (AZ Bar No. 013227)
SARAH GREENWALT MCMURRAY
Assistant U.S. Attorney (OK Bar No. 31566)
U.S. Attorney's Office
Western District of Oklahoma
210 Park Ave., Suite 400
Oklahoma City, OK 73102
Phone: (405) 553-8700
ron.gallegos@usdoj.gov
sarah.mcmurray@usdoj.gov

**Signature Page to Consent Decree in *United States v. Holly Energy Partners-Operating, L.P., et al.***

**FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):**

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: _____

DAVID UHLMANN
Digitally signed by DAVID UHLMANN
Date: 2024.01.29 14:22:09 -05'00'

DAVID M. UHLMANN
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

ROSEMARIE KELLEY
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

BENJAMIN BAHK
Division Director
Water Enforcement Divison
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

KELLY ANN KACZKA BRANTNER
Attorney-Advisor
Water Enforcement Divison
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

**Signature Page to Consent Decree in** *United States v. Holly Energy Partners-Operating, L.P., et al.*

**FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):**

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 6:

PATRICIA WELTON
Digitally signed by PATRICIA WELTON
Date: 2024.01.11 07:57:58 -06'00'

_____
Date

PATRICIA WELTON
Acting Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75270

Cheryl J. Seager
Digitally signed by CHERYL SEAGER
Date: 2024.01.11 15:57:59 -06'00'

_____
Date

CHERYL SEAGER
Director
Office of Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75270

AMY SALINAS
Digitally signed by AMY SALINAS
Date: 2024.01.03 10:24:14 -06'00'

_____
Date

AMY SALINAS
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75270

**Signature Page to Consent Decree in** *United States v. Holly Energy Partners-Operating, L.P., et al.*

**FOR DEFENDANT HOLLY ENERGY PARTNERS–OPERATING, L.P.:**

01/02/2024
Date

Rob Jamieson
Vice President, Midstream
Holly Energy Partners-Operating, L.P.

Stephen L. Jantzen (OK Bar No. 16247)
Ryan Whaley PLLC
400 North Walnut Avenue
Oklahoma City, OK  73104
Telephone: (405) 239-6040
sjantzen@ryanwhaley.com

*Counsel for Settling Defendants*

31

**Signature Page to Consent Decree in *United States v. Holly Energy Partners-Operating, L.P., et al.***

**FOR DEFENDANT OSAGE PIPE LINE COMPANY, LLC:**

01/02/2024
_____
Date

_____

Rob Jamieson
Vice President, Midstream of
El Dorado Osage LLC, Managing Member of
Osage Pipe Line Company, LLC


Stephen L. Jantzen (OK Bar No. 16247)
Ryan Whaley PLLC
400 North Walnut Avenue
Oklahoma City, OK  73104
Telephone: (405) 239-6040
sjantzen@ryanwhaley.com


*Counsel for Settling Defendants*

32